and I'd refer you to Professor Kerr's amicus brief in the Van Buren case. He says the concept of a computer has mutated. Today the idea of a discrete computer is largely outdated. And if you look at the exhibits that they put in to show what my clients saw, nothing says you're going to this computer or that computer and finally you wind up in the mainframe. It's on pages 98 through 118 of my appendix. You can see what my clients saw and there's nothing in there which tells you where on this network you are. And so they conceded. They give up. He had access to that network. He just didn't have access to this one little part. And that's not without access. It may be exceeding authorized access, Your Honor, but they didn't charge them. And they've got to charge the right section. Thank you, counsel. Thank you both. We'll take the case under advisement. The next argument will be in case number 22—23, I'm sorry, 271. Bergeron v. Rochester Institute of Technology. May it please the court. My name is Philip Curia and I represent the plaintiffs' appellants in this case. This is a COVID tuition reimbursement class action and it comes before this court because the trial court granted summary judgment in RIT's favor. We're asking that that decision be overturned because questions of fact exist that need to be resolved. The main issue in this case is whether RIT had an obligation to provide in-person education to the plaintiffs. We say they did. Now the trial court disagreed and the trial court said that the issue was governed by a fully integrated express contract, the SFRA. Respectfully, that conclusion was incorrect for a few reasons. First, the SFRA doesn't mention the mode of learning at all. Second, the SFRA doesn't say anything about RIT's obligations to the students. So if this was a fully integrated contract, it would mean that RIT is entitled to keep their tuition the moment they register for classes. That's clearly not the case. They must owe the students something. And finally, the agreement doesn't purport to be the entire agreement between the parties. It actually says it's only the entire agreement between the parties with respect to the matters described. Well, it wasn't described. Pardon me. You will concede that it references the refund policy, is that right? It references the refund policy, correct. Okay, and will you concede that it governs a provision of instruction and services in exchange for payments of tuition and fees? We do not concede that because it does not actually say that. It says if you are allowed to register for classes, you're going to pay tuition. Let's just look at it for what it is. It's a document that's meant to put the university in the best possible position in case someone registers for classes and just doesn't pay or doesn't pay the whole amount. It's not meant to be an agreement governing the entire relationship because, you know, you look at it and the terms of the relationship just aren't there. So we say, look, maybe it's a contract, maybe it's not, but it doesn't govern this issue. Our view is that the mode of education is instead governed by an implied contract between the parties. And to support this conclusion, we look at a number of different data points that are in the record. This includes the fact that RIT offers two programs, one online and one much more expensive program in person. Right. But didn't they provide. Well, you would agree that both of your both of the named clients right now are both of the named plaintiffs. We're not in a program that prior to the pandemic had online classes. Well, I think that it's a little bit of a nuanced answer because there's an online program and an in-person program. And there might be an option for some people in the in-person program to sometimes take classes online. But here I think they had to create a new program to govern the degree, the degrees that your clients wanted to obtain. Right. Because that wasn't part of the online program. That was just like a business administration. Right. And I think that one of the words your honor used is very important. You said they had to. Right. So that would mean and that would potentially suggest that even if they had promised in-person learning, they had to divert away from that. That would be an impossibility defense. And that's not something that RIT raises here for an important reason. Because if it's an impossibility defense, we get to proceed on an unjust enrichment theory. They don't want that. They want you to find that this contract that says absolutely nothing about what they're going to do is this all encompassing agreement. But I would say the most important data point on looking for an implied contract is the fact that both of these plaintiffs went on something called the SIS. They registered for their spring 2020 classes. And those classes were listed not only by description but also by the meeting time and the physical classroom location. Did Bergeron pay any tuition or fees for spring 2020? Yes. So he paid tuition but he also received grants and he received scholarships that exceeded the tuition amount. Right. But if he had received a lower tuition amount, he could have used those funds potentially for his room and board. Which I think RIT concedes he did pay some money out of pocket towards that. So he certainly hasn't been damaged perhaps to the same degree as Mr. Quattrochoki. But there is still damages there. But I think the most important issue is if you agree, if this court agrees that this completely scant SFRA doesn't govern the issue. And maybe potentially there's an implied contract. As Judge Park knows from his sitting on the Rhinosco panel, the question of whether or not there's an implied contract is a question of fact. It's for the jury to decide, not for this or any other court to decide. The district court's decision in this case was before both Rhinosco and Goldberg, right? Yes. So look, they're important though because Rhinosco though was a pleading stage decision. But in that decision, this court recognized that an implied contract can be born under these circumstances. Potentially depending on the proofs and what bears out in discovery. And that's what we have here. But also if there is no implied contract, if this goes back to the jury and they say, sorry, no implied contract on this issue. Then we get to proceed under our unjust enrichment theory. And that again, questions of fact are going to exist as to whether RIT was enriched in a way that is against conscious and good equity. So we have questions of fact here that need to be resolved. They need to be resolved by a jury. So we're asking you to send this case back down so that those proceedings can take place. And if there aren't any other questions, I'll speak with you all again on my rebuttal. You're reserved a couple minutes for rebuttal. Okay, thank you very much. Good morning, Your Honors. Robert Burns for the Appellee RIT. May it please the Court. Let's start exactly where we just ended with the Rhinosco decision. Our view is Rhinosco doesn't control the outcome here for two reasons. The second reason, which I'll address in a moment, is that there is an express contract here. But the primary reason is that Rhinosco was a pleading decision under 12b-6 standards, and we're now here on a full factual record, and that matters here. Rhinosco was concerned with plausibility. In the words of the Rhinosco Court, whether the allegations raised more than a sheer possibility that plaintiffs could have a claim here. But summary judgment is a different animal, of course, and we're past the pleadings, and we now assess the proof. And there's an overlay here, Your Honors, that matters. And that's the overlay of the evidentiary burdens to which these claims are subject. And that means, of course, the preponderance standard. But because this is a case involving students against an educational institution, there's a particular overlay that matters here, and that's the specific promise standard under New York law. And what the specific promise says, it has a long pedigree under New York law. It says that for a student to have a claim, to make out a claim for contract against an educational institution, needs to show a specific promise. So not- And that promise has to be in the SFRA under the district court's conclusion, right? Well, under the primary rationale of district court was the SFRA-governed express contract. So let me ask you about that. If RIT decided after the refund period closed that they just wanted to save some money this semester and just go completely online, shut down on campus, maybe do some repairs, capital improvements, things like that, would the students have any recourse? Perhaps, Your Honor. How? Where is that prohibited under the SFRA under your reading? Well, the SFRA requires RIT to provide classes. Classes. Where does it say that? Can you direct me to it? Sure. Well, online. I'm starting with online. Excuse me? So if they went completely online- That's right. You said that would be prohibited by the SFRA? No, no, Your Honor. The SFRA requires RIT to provide classes, right? Classes. And that's what it says. So going online would be okay? No? Under our reading of the express contract, it might be, Your Honor. It might be under those circumstances because RIT has provided the classes in exchange for the payment of tuition. So if we're right on the express contract, classes ends the question, right? RIT provides the student registers for PSYCH 101. RIT provides a course called PSYCH 101. And if the student completes that course, PSYCH 101, the student gets the accompanying credits for that course. What if RIT decides, you know what, we're not going to do arts and humanities or social sciences this term. Just STEM. Is that okay? Under the SFRA? Correct. It may or may not be, right? I mean, so the student has- Excuse me, I have a question. This is an express contract, in your view. That's right. So it either is or is not prohibited by the SFRA. So it requires RIT to provide classes. So if a student were to register for a class, and RIT were to take the student's money, and then RIT were to say, we changed our mind. We're not going to provide this class or, frankly, any classes at this point, then the student would have a claim that RIT has fallen short of its public- So what if it provided just STEM classes? That's my hypothetical right now. That's classes. Well, the SFRA is tied to the classes for which the student registers, right? So if the student registers for a class- You're fighting the hypothetical here a little bit. But let's say the student registers some arts and humanities and some STEM classes. And the hypothetical is that RIT cancels one but not the other? Save money this spring by eliminating the arts and humanities portion of its curriculum. No classes at all. So I changed from the online part of the first question. I think there could be a viable claim there under those circumstances. How? So tell me where and how in the SFRA that's a contract claim. Well, because the contract, the SFRA contemplates the bilateral exchange. A student registers for classes, RIT- Where does it say that there's- Can you tell me where in the SFRA RIT is obligated to do anything or refrain from doing anything? That's what I'm having trouble with. Because it looks an awful lot like a unilateral contract, where it says you owe us money, and then this is when you can get it back and when you can't. And I don't see what you're saying right now, which is that if we fail to do something, then you can sue us. Well, I'm reading it from the language that when I register for a class or receive any service, dot, dot, dot, that I pay tuition as a result of my registration or receipt of service. So it's the as a result of language that I'm reading the obligation imposed on RIT. Second paragraph. That's correct. And ultimately, Your Honor- So where is the line, then? How many classes would RIT have to provide versus not? So if the students- The classes for which the student registers. So if, let's say, one class, a professor leaves and they can't staff instruction for one class, and the students have- everyone who signed up for that class that's taken off the spring curriculum has a lawsuit against RIT? Not necessarily, Your Honor. I think you need to read- Have you just said that that's what they could- that's what this means? No, Your Honor. The student registers for a class. RIT provides the class. A class. Classes and services. Whatever that means. And if we need to look at what that means- The student signs up for Psych 101. That's right. They can't teach Psych 101. They can't offer it this spring for whatever reason. Is there a claim or not? I believe there might be, Your Honor. Under those circumstances, yes. And they would refund the money for that one class? Perhaps. Perhaps, Your Honor. And I guess the point is, in ascertaining what classes and services means, it may be permissible to look beyond the four corners of the contract, right? I mean, New York law allows you to, for purposes of ascertaining whether that language is clear and unambiguous or is ambiguous, you can look beyond the four corners and you can look to the surrounding circumstances to see whether an interpretation is reasonable. And that's where I think, Your Honor, the implied contract analysis is coextensive with the express contract analysis. Because when you look beyond- I don't understand the thing you just said. These are separate things. Express and implied contracts, right? They are, Your Honor. But the argument is, from my colleague, that classes is ambiguous, right? We don't know what that means. It might mean exclusively in-person classes. And you're conceding that? No, I'm not conceding that. But what I'm saying is, even if you were to look beyond the terms of the contract to figure out whether or not classes may be ambiguous as a matter of law, which this Court has permitted to do, you end up in the same place. And that's because of the specific promise standard. So classes can't mean everything under the sun. Classes can't mean everything that RIT says anywhere in its bulletins. Classes must mean a specific promise. I mean, one of the things that I'm troubled with, and I would appreciate the answer or some explanation on, is how the Rhinestone Court's emphasis on mutual intent or expectations factors into what this contract meant. I think here, Your Honor, we need to draw a line between expectations and reasonable expectations, because reasonable expectations is the standard it governs. So I think there's no dispute here that everyone expected that spring of 2020 would look a lot like spring of the preceding years. But that's not the question. The question is whether or not RIT made a specific promise to provide exclusively in-person education. That's the real question here. And we think on this summary judgment record, there's no evidence of that. And I say that for a number of reasons. One, we have in the summary judgment record, we just have some statements regarding campus and labs and things like that, some vague statements. We have some subjective expectations claimed by the plaintiffs in this case, that they expected something different or they expected exclusively in-person education. But that's all. But there's an overlay here that I think is particularly important in ascertaining whether or not the expectations of exclusively in-person education were reasonable, and therefore whether a specific promise was made. And that's the reservation of rights language that appears in this case. So it appears in two places. The first is on the website, and the disclaimer says this is not a promise or a representation or a contract. And the second location is right at the beginning of the student bulletin. It says very clearly that this is not a contract, but it doesn't stop there. It goes on to explain why that is. It says the contents of this bulletin are our best view, our best academic, social, and financial planning at the time of this publication. So in the summer of 2019, when no one's contemplating the pandemic, this is our best planning. However, course and curriculum changes may occur, and there may be unforeseen changes in other aspects of RIT's life. Now, we're not arguing that this language is dispositive. It may be a data point, but it needs to be harmonized with the rest of any implied contract here. You can't just excise them. They must mean something. And what they mean is that RIT is retaining for itself the flexibility to respond to exactly what happened here, unforeseen changes in aspects of RIT's life, which may engender the need to make course and curriculum changes. And that flexibility needs to be read into any implied contract here. And I think on this point, this court's recent decision in the Pace case is particularly instructive because the concern there was on foreseeability. And the language that was upheld by this court just a few months ago in Goldberg actually encompassed the same concept of foreseeability or lack of foreseeability that we have in RIT's reservation of rights language here. I see my time has expired. Thank you very much, Your Honors. Thank you, Counsel. Thank you. I'm going to touch upon a few points that were addressed by my colleague. The first is this concept that the specific promise standard governs. Under New York law, which was stated in the Moss decision, the Court of Appeals ruling, an implied contract can actually arise even from conduct. So when we talk about a specific promise, let's understand. That doesn't mean someone needs to expressly say, I'm going to do X, Y, Z. If they did that, it would actually be an express contract, an oral express contract. So the specific promise standard needs to be judged against the actual New York jurisprudence. Second, on the issue of the reservation of rights, this court has already looked at this in Reinasco. A reservation of rights like this, it's one-sided. It doesn't actually control the question. In Pace, there was an actual full-throated force majeure clause, which is why this court decided that case quite differently. So there's no force majeure clause here. So the Pace decision is not informative. Can I ask, just I've been doing some thinking about the lines you're trying to ask us to draw and some of the conversation that Judge Park had with your colleague. Sure. If a professor decided, the class is in person, but a professor decided to cancel it, under your theory, would they have a claim for tuition? To cancel it as in never hold it? Just like one time, like one time, one shot. They're supposed to have a class on Wednesday. Professor says, you know what, we're not having it. Just one Wednesday? Yeah. I think that would be a very weak but potentially actionable claim. What if they decided, you know what, I've got COVID, and I'm going to teach that class online, even though every other time it's going to be an in-person class? Would they have a claim? Well, they would have a claim. But again, it's for a trier of fact to determine if it's actually a breach of the promise. So I mean, yeah, me as counsel for the plaintiff, if you put me on the jury, I'm going to vote for yes, they breached the contract. No, is the legal standard any different? Like, I mean, the way I think I'm understanding is that you're saying that they had a promise that both parties understood that it would be in-person. And then when it wasn't, they breached. And so your client gets the money back. So if one professor decides to have one class, one class session online, is that a claim under the implied or expressed contact theory you're trying to put forward? Well, sure. It's a claim that could be made. But again, it's for a jury to decide whether that – no, look, this is a concept of de minimis action, right? So would something like changing the mode of learning one time because of an issue be a breach of the contract? How does that not fall back into what your colleague said about it needed to be a reasonable expectation, right? If you understand that there's some play in the joints because of unforeseen things or one-offs, then why does that not put us back to where he suggested that it was what they reasonably expected? But he's right on that. It is about reasonable expectations. But we take the data points and we ask a jury whether the reasonable expectations actually created mutual assent between the parties. This is a question of fact. It's not for me to say. It's not for the court to say. The only reason why this ended up being decided on summary judgment was there was a determination that this SFRA was an expressed contract. So, I mean, if that's not the case, questions of fact are going to exist. And just one last point, if I can make very briefly, is that my colleague mentioned something about the potential ambiguity in the SFRA. And I just want to just point out that in the event that anything in the SFRA is deemed to be ambiguous, the question of interpreting an ambiguous provision in a contract is also a question of fact. So questions of fact abound. Send us back to the trial court, and we'll finish the case up there. Thank you very much, Your Honors. Thank you, counsel. Thank you both. We'll take the case under advisement.